CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

NICHOLAS M. PARKER (CABN 297860)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7368
    nicholas.parker3@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ERNESTO RODRIGUEZ, JR.,<br><br>    Defendant. | CASE NO. 4:24-CR-00500-YGR-2<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Hearing Date:   May 13, 2026<br>Hearing Time:   2:00 p.m.<br>Court:   Hon. Yvonne Gonzalez Rogers<br>Courtroom:   1 (4th Floor) |

## I.    INTRODUCTION

Between October 2023 and September 2024, when he was arrested, the defendant, Ernesto Rodriguez, sold and conspired to sell significant quantities of methamphetamine and fentanyl to at least three different buyers in the San Francisco Bay Area. One of those buyers was an undercover DEA agent who was introduced to the defendant by a Mexico-based drug supplier with connections to the Sinaloa Cartel. In his interactions with the undercover DEA agent, the defendant promoted his association with Mexican drug suppliers and held himself out to be a high-level dealer of fentanyl and methamphetamine—two drugs that have wrought devastating consequences in the Bay Area and beyond.

The sheer quantity of methamphetamine at issue in this case counsels in favor of a lengthy prison sentence. Moreover, the defendant has a violent streak and a troubling history of domestic disputes,

1

including multiple reported incidents involving romantic partners and his own children *while this case has been pending*. Accordingly, the government submits this sentencing memorandum to advise the Court why it believes a sentence of 66 months in custody is a reasonable disposition of this case. The U.S. Probation Office has recommended a sentence of 48 months. *See* Dkt. 105 (PSR) at 23. The defendant has not yet made a sentencing recommendation.

## II.      DISCUSSION

### A.      Offense Conduct

The government generally agrees with the recitation of offense conduct in the Presentence Investigation Report (PSR) prepared by the Probation Office. *See* PSR ¶¶ 12–17. In October 2023, the defendant sold one ounce of fentanyl to an undercover law enforcement officer in Oakland. *See* PSR ¶¶ 13–14. Several months later, in July and August 2024,[1] the defendant and his co-defendant, Allan Ochoa, coordinated two sales of what they said was fentanyl (but which were in fact uncontrolled substances) to a different undercover law enforcement officer as well as the sale of one pound of methamphetamine and two ounces of fentanyl to a confidential informant working with the Drug Enforcement Administration (DEA). *See* PSR ¶¶ 15–17. Each of those three drug deals occurred in the defendant's car in or near Oakland; for each of them, the defendant was in the driver's seat; and for the two sales to the undercover officer, who spoke English, the defendant was the principally responsible conspirator. *See id.* Following the final drug deal, on August 14, 2024, the defendant aggressively pursued a DEA surveillance vehicle, causing the driver—an undercover DEA agent—to crash. *See* PSR ¶ 17. No one was injured, but the defendant confronted the undercover DEA agent (who had, by then, activated the emergency lights on his car, making clear he was law enforcement) and stood down only when Hayward Police Department officers arrived at the scene. *See id.*

---

[1] In the intervening months, the government obtained authorization to intercept the defendant's wire and electronic communications. *See* Case No. 3:24-mj-71076 JST. Those communications make clear that the defendant was a professional drug dealer. He spoke often and extensively with several different Bay Area drug dealers about obtaining and selling drugs, and he travelled (or sent others) to Southern California multiple times to pick up drugs and drive them back to the Bay Area.

2

### B.    Procedural History

A grand jury originally indicted the defendant and Mr. Ochoa, among others, in September 2024, charging them with an array of drug crimes, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)–(C) and 846. *See* Dkt. 17. In July 2025, the government filed a superseding information charging the defendant with conspiracy to distribute and possess with intent to distribute fentanyl and methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(C) [Count 1]; distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) [Counts 2 and 4]; and distribution of 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii) [Count 3]. *See* Dkt. 58.

Pursuant to a plea agreement with the government, the defendant pleaded guilty on July 31, 2025, to all four counts against him. *See* Dkt. 65. As part of his guilty plea, the defendant agreed, among other things, (i) to the Guidelines calculation noted below; and (ii) that the Probation Office should impose a special search condition for any period of supervised release. *See* Dkt. 65 at ¶¶ 7–8. In exchange for the defendant's guilty plea, the government agreed, among other things, to recommend a custodial sentence of no more than 66 months. *See* Dkt. 65 at ¶ 15. The defendant has been in federal custody since April 22, 2026, when Judge Westmore revoked his release upon finding him a danger to the community following an incident in which he assaulted his own daughter. *See* Dkts. 117–119.

One of Mr. Rodriguez's co-defendants, Mr. Ochoa, also pleaded guilty and was sentenced by this Court to 40 months in custody. *See* Dkts. 106, 111. No other defendant has yet appeared in this case.

### C.    Sentencing Guidelines Calculation

The government agrees with the Probation Office's calculation of the Sentencing Guidelines. *See* PSR ¶¶ 23–33, 69. Specifically, the government agrees that the Base Offense Level is 30 based on the combined converted drug weight at issue. *See* PSR at ¶¶ 23–24. However, the government also agrees that certain reductions are appropriate, including for the defendant's acceptance of responsibility, such that the Total Offense Level is 25. *See* PSR at ¶¶ 25, 31–33.

The government also agrees with the finding of the Probation Office that the defendant has three criminal history points, placing him in Criminal History Category II. *See* PSR ¶¶ 36–41. A total offense level of 25, at Criminal History Category II, yields an advisory sentencing range of 63 to 78 months of imprisonment. *See* PSR ¶ 69; U.S.S.G. ch. 5, pt. A.

**D.    Applicable Law**

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Sentencing Guidelines. *See id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *See id.* at 991-93.

In arriving at the appropriate sentence for Mr. Rodriguez, and in light of 18 U.S.C. § 3553(a), the Court should consider these factors applicable to this case, among others:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (3)    the need for the sentence imposed to afford adequate deterrence to criminal conduct;

    (4)    the need to protect the public from further crimes of the defendant; and

    (5)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

**E.    Recommended Sentence and Section 3553(a) Factors**

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends a sentence of 66 months in custody, to be followed by four years of supervised release. Such a sentence would be sufficient, but not greater than necessary, to reflect the purposes of sentencing, in consideration of, among other things, the nature and circumstances of the offense; the history and characteristics of the defendant; the needs for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to deter the defendant from committing future crimes; the need to protect the public from further crimes of the defendant; and the need to avoid unwarranted sentence disparities. In addition, the defendant has agreed that an expanded search condition may be imposed during any term

of supervised release. *See* Dkt. 65 at ¶ 8. Given the nature of this offense, the requested condition is necessary to serve the interests of deterrence and rehabilitation.

The defendant has a troubling penchant for violence, particularly toward his domestic partners. He has a domestic violence conviction from 2016 in which he hit his then-girlfriend in the face. *See* PSR ¶ 37. He was arrested again for assaulting that same ex-girlfriend in 2020 after he repeatedly punched her in the head with a closed fist. *See* PSR ¶ 43 (case dismissed). He was arrested in April 2021 for inflicting injury upon a child. *See* PSR ¶ 47 (case dismissed). And he was arrested twice more following domestic violence incidents *while on pretrial release in this case*: in December 2024, the defendant was arrested for assaulting the same ex-girlfriend who bears the repeated scars of the defendant's abuse and who, at the time, was a co-signer on his bond form. *See* PSR ¶ 8. And in April 2026, the defendant was arrested after he "allegedly hit[ his] four-year-old daughter … in [her] face" and "hit [her] repeatedly with a leather belt due to [her] behavior at day care," causing "injuries to her face, arms, butt, leg, and back." Dkt. 117 at 1.[2]

The government applauds the defendant for promptly and unequivocally taking responsibility for his criminal conduct in this case and for his apparent devotion to his four children, notwithstanding the incidents described herein. Nevertheless, the fact remains that Mr. Rodriguez—who, unlike many defendants who come before the Court to be sentenced, was *not* abused as a child and does *not* come from a broken or violent home, *see* PSR ¶¶ 49–58—made a choice to sell drugs. At the time he committed this offense, the defendant had access to significant quantities of two exceptionally dangerous drugs that have wreaked havoc here in the Bay Area and across the country. Where others work multiple jobs to make ends meet or struggle to get by but remain law-abiding members of society, Mr. Rodriguez turned to crime. He must face the consequences of that choice.

### III.   CONCLUSION

For the foregoing reasons—and in full consideration of the applicable Sentencing Guidelines, the goals of sentencing, and the factors set forth in 18 U.S.C. § 3553(a)—the government respectfully

---

[2] Furthermore, in October 2025, the defendant's most recent romantic partner (who was also his most recent bond co-signer) told Pretrial Services that the defendant had threatened her. *See* PSR ¶ 10. Although she sent photographs of the defendant's threatening text messages to Pretrial Services, she later recanted. *See id.*

requests that the Court sentence the defendant to 66 months in custody, to be followed by four years of supervised release. Such a sentence accounts not only for the defendant's status as a professional drug dealer whose choices undoubtedly contributed to the surge of addiction plaguing the Bay Area and the nation, but also for his woeful performance on pretrial release and his disturbing history of domestic violence. The government also requests that the Court include the expanded search condition to which the defendant has already agreed among the conditions of his supervised release. The defendant shall also pay a mandatory special assessment of $400 ($100 per count).

DATED: May 6, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney


  /s/ *Nicholas Parker*
NICHOLAS M. PARKER
Assistant United States Attorney

6